# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

Jamell Olmstead Malone,      )
     )    No. 13 C 3900
        Plaintiff,      )
     )
       vs.      )    Judge Thomas M. Durkin
     )
City of Chicago, Officer Foggey,      )
and Officer Campbell,      )
     )
       Defendants.     

## MEMORANDUM OPINION AND ORDER

Plaintiff Jamell Olmstead Malone brought a *pro se* complaint alleging two Chicago Police Department ("CPD") officers, Foggey and Campbell, deprived him of his constitutional rights under 42 U.S.C. § 1983.[1] The incident at issue occurred on March 18, 2013, when Malone was pulled over for driving with only one functioning headlight. Defendants have moved for summary judgment. For the reasons that follow, the Court grants Defendants' motion.

---

[1] The Court dismissed Malone's original complaint naming the CPD as the only defendant because the proper municipal defendant was the City of Chicago. R. 24. Malone filed an amended complaint naming as defendants (1) the City of Chicago, (2) the CPD, (3) Officer "Foggery," and (4) Officer Campbell. R. 25 at 2. The Court strikes the CPD as a defendant based on its previous ruling. In addition, the Court identifies Officer Foggey using the correct spelling, as indicated by Defendants.

# STATEMENT OF FACTS[2]

At approximately 12:15 a.m. on March 18, 2013, Malone was driving his car alone on 71st Street heading westbound, when he was pulled over near the intersection of 71st Street and Stony Island Avenue by Officer Foggey, who was in a marked CPD squad car. R. 59 at 3-4 (¶¶ 12, 14). Also present was Officer Campbell, who was partnering with Officer Foggey at the time. R. 59 at 4 (¶ 13). Officer Foggey pulled Malone over for operating his car with only one functioning headlight. *Id.* (¶ 15). At the time he was pulled over, Malone had his car windows closed and his car doors locked. *Id.* (¶ 16).

Officer Foggey approached the driver's side of Malone's car. Malone partially lowered his window to allow the exchange of paperwork and verbal communication through the gap. *Id.* (¶ 17). Officer Foggey identified himself as a CPD Officer and explained that he pulled Malone over for failing to have two functioning headlights. *Id.* (¶ 18). Officer Foggey requested that Malone produce his driver's license.

---

[2] The facts recited herein are taken from Defendants' Local Rule 56.1 statement, which the Court deems Malone to have admitted based on his failure to file a response as required by Local Rule 56.1(b)(3). *See Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) (district court did not abuse its discretion by adopting officers' version of events where *pro se* plaintiff failed to comply with Local Rule 56.1). After filing their motion for summary judgment, Defendants served and filed a separate "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment," R. 62, explaining the process for opposing summary judgment, including the process for complying with Federal Rule of Civil Procedure 56(e) and Local Rule 56.1. In addition, the Court advised Malone at the last status conference to seek assistance from the *pro se* desk in the Clerk's Office. Thus, Malone had ample notice regarding the requirements of the Local Rules. Notwithstanding Malone's failure to comply, however, the Court has taken into consideration all of the facts alleged by Malone in his complaint, his deposition, and his opposition brief. Those alleged facts (most of which are not contested by Defendants), do not alter the conclusions reached by the Court.

Malone stated that he did not have a driver's license, and that he was "riding on papers" given to him when his license was taken for a previous traffic citation he had received (also for the broken headlight). *Id.* (¶ 20). Officer Foggey responded by instructing Malone to get out of his car. Malone refused. *Id.* (¶ 21). Due to Malone's inability or refusal to produce a driver's license, and his refusal to get out of the car, Officer Foggey radioed for back-up. *Id.* at 5 (¶ 23). Approximately six police officers responded to his request. *Id.* (¶ 24). After the other officers arrived, Malone got out of his car. Officer Foggey immediately handcuffed him and patted him down. Malone was read his *Miranda* rights and put in the back of the patrol car. *Id.* (¶¶ 25-27). Officer Foggey then drove the patrol car with Malone in the back seat to the police station, while Officer Campbell drove Malone's car to the same location. *Id.* (¶¶ 29-30).

At the police station, Malone was placed in a room for approximately 45-60 minutes. *Id.* at 6 (¶ 31). He was not fingerprinted or formally processed. *Id.* (¶ 32). Instead, Officer Foggey wrote him two tickets, one for driving without a valid driver's license and the other for driving with a non-functional headlight. *Id.* (¶ 33). Officer Foggey presented the tickets to Malone and indicated that he was free to leave. Malone was given his car keys and left the police station. *Id.* (¶ 34).

## STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).

The Court considers the entire evidentiary record and views all of the evidence and inferences therein in the light most favorable to the non-moving party. *Ball v. Cotter,* 723 F.3d 813, 821 (7th Cir. 2013). To defeat summary judgment, the non-moving party must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey,* 711 F.3d 794, 798 (7th Cir. 2013). Ultimately, summary judgment is warranted only if a reasonable jury could not return a judgment favoring the non-moving party. *Anderson v. Liberty Lobby.,* 477 U.S. 242, 248 (1986).

## DISCUSSION

### I. MALONE'S CLAIMS AGAINST THE CITY OF CHICAGO

In *Monell v. Department of Social Services of N.Y.*, 436 U.S. 658 (1978), the Supreme Court established both the fact that "municipalities and other local government units [were] included among those persons to whom § 1983 applies," *id.* at 690, and the limits of such actions. Most importantly, *Monell* held that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. Instead, municipal liability exists only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694. The Seventh Circuit has identified three different ways in which a municipality or other local governmental unit might violate § 1983: (1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a "wide-spread practice" that although not authorized by written law and express

policy, is so permanent and well-settled as to constitute a "custom or usage" with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with "final decision policymaking authority." *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995). Malone has presented no facts to establish a triable issue under any of the three ways in which to hold the City of Chicago liable for the alleged constitutional violations of the individual police officers. Therefore, the Court must enter summary judgment in favor of the City of Chicago.[3]

## II.   MALONE'S CLAIMS AGAINST THE INDIVIDUAL OFFICERS

Section 1983 provides a civil cause of action to any citizen of the United States against any person who, under color of state law, deprives the citizen of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. To succeed on a § 1983 claim, a plaintiff must prove two elements: (1) that he was deprived of a right secured by the Federal Constitution or laws of the United States; and (2) that he was subjected to this deprivation by a person acting under the color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988). Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979). In addressing constitutional claims

---

[3] In any event, Malone's claims against the City of Chicago must be dismissed because the Court holds in the next section that Malone cannot prove any underlying constitutional violation. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986) (if the officer "inflicted no constitutional harm" the municipality also cannot be liable).

brought under § 1983, therefore, "analysis begins by identifying the specific constitutional right allegedly infringed." *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Baker*, 443 U.S. at 140 (the "first inquiry" is "to isolate the precise constitutional violation with which [the defendant] is charged").

The complaint alleges that the police officers violated Malone's rights under the "1st, 4th, 5th, 6th, 7th, 8th, 9th, and 10th Amendments." R. 25 at 3. The majority of Malone's sources of constitutional protections can be eliminated from the outset. The First, Sixth, Seventh, Ninth, and Tenth Amendments have nothing to do with any issue that could plausibly be raised by the facts alleged by Malone. And while Malone does assert he was subjected to "excessive punishment," the Eighth Amendment can only be invoked by persons who have been convicted of crimes, *see Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977), which, at the time of his arrest, Malone had not been. Malone's excessive punishment claim, therefore, must arise if at all under the due process clause. *Id.* Malone invokes his due process rights through the Fifth Amendment, but citizens of the States take their due process protections directly from the Fourteenth Amendment. Although Malone did not invoke the Fourteenth Amendment in his complaint, the Court will assume he meant to do so. Thus, the Fourth and Fourteenth Amendments are all the Court need consider in this case.

### A.   FOURTEENTH AMENDMENT

To the extent that Malone is complaining that his due process rights were violated, the Court must dismiss that claim. The Supreme Court has held that "if a

constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). Malone alleges that (1) his vehicle was unlawfully stopped; (2) he was falsely detained; and (3) his vehicle was searched, seized and driven without his consent. R. 25 at 4; R. 6 at 3. The Fourth Amendment specifically covers unlawful searches and seizures. Hence, the police officers' § 1983 liability, if any, must turn on an application of the reasonableness standard governing searches and seizures, not the due process standard of liability for constitutionally arbitrary executive action. *Cf. Graham,* 390 U.S. at 395 ("*all* claims that law enforcement officers have used excessive force— deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach") (emphases in original).

## B.    FOURTH AMENDMENT

"The 'touchstone' of [the Supreme Court's] analysis under the Fourth Amendment is always the 'reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'" *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977) (quoting *Terry v.* Ohio, 392 U.S. 1, 19 (1968)). "Reasonableness, of course, depends 'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law

officers.'" *Mimms,* 434 U.S. at 109 (quoting *U.S. v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)). Malone testified that what happened to him in the early morning hours of March 18, 2013 was unreasonable. According to Malone, he was stopped without good cause, harassed when he was ordered out of his car, subjected to an unwarranted search of his person and vehicle, and then arrested and detained, all done to him because of a traffic violation. *See* R. 61-4 at 15. While the Court understands that Malone felt harassed in the early morning hours of March 18, 2013, the Court cannot say that any of the police officers' conduct violated Malone's constitutional rights. To better understand why that is the case, the Court will go through the events of that night step by step.

### 1.     Vehicle Traffic Stop

The first thing that happened to Malone was that Officers Foggey and Campbell stopped his car. A traffic stop may be justified by either reasonable suspicion or probable cause. *United States v. Bentley*, 795 F.3d 630, 633 (7th Cir. 2015) (citing *United States v. Childs*, 277 F.3d 947, 952 (7th Cir. 2002) (en banc)). Stops based on reasonable suspicion are known as investigative or *Terry* stops. *See Terry*, 392 U.S. 1. *Terry* stops are subject to scope and duration restrictions, whereas stops based on probable cause are not. *Bentley*, 795 F.3d at 633; *see Childs*, 277 F.3d at 952-53 (a person stopped for probable cause "need *not* be released as quickly as possible") (emphasis in original). Here, the police officers had probable cause to stop Malone's car because one of the headlights on his car was out. Driving without a headlight at 12:00 a.m. is a violation of the Illinois Vehicle Code. *See* 625

ILCS 5/12-201(b) ("All [ ] motor vehicles [besides motorcycles] shall exhibit at least 2 lighted head lamps, with at least one on each side of the front of the vehicle . . . during the period from sunset to sunrise . . . ."). Where a police officer has probable cause to believe a traffic violation has occurred, he has probable cause to stop the car. *See Whren v. United States*, 517 U.S. 806, 810 (1996) ("the decision to stop an automobile is reasonable where the police have probable cause to believe a traffic violation has occurred").

Malone appears to concede that the police officers had probable cause to stop his car. *See* R. 65 at 1 (stating that "so long as the circumstances confronting the police officer support the reasonable belief that a driver has committed even a minor offense, the officer has probable cause to stop the driver," and citing *Stapleton v. Thornton*, 2012 WL 266323, at *2 (N.D. Ill. Jan. 26, 2012)). But Malone argues this is unfair. *See* R. 65 at 2 ("The determination that one head lamp is out . . . is not enough to apply a minor traffic stop into probable cause for defendants to accuse plaintiff of criminal activity."). In *Whren*, 517 U.S. at 810, the Supreme Court addressed the argument that it was unreasonable to allow police officers to stop a vehicle based only on a traffic violation. The defendants were convicted of drug charges after their truck was stopped for a traffic violation and the stopping officers upon approaching the car saw cocaine in plain view. *Id.* at 808-09. The defendants argued that allowing police officers to use any minor traffic violation as a pretext for stopping a car when the traffic violation was not the real reason for the stop "creates the temptation to use traffic stops as a means of investigating other

law violations, as to which no probable cause or even articulable suspicion exists."
*Id.* at 810. The Supreme Court rejected that argument, holding that, while the
Fourth Amendment "involves a balancing of all relevant factors[,] [w]ith rare
exceptions not applicable here . . . the result of that balancing is not in doubt where
the search or seizure is based upon probable cause." *Id.* at 817. In short, the
existence of probable cause, which Malone concedes, means the stop was
reasonable.

### 2.    Ordering Malone Out of the Car

Next, the Court considers the police officers' conduct leading up to and then
ordering Malone to get out of his car. Malone states that he has an on-going concern
about his rights as a citizen when being approached by police officers, and therefore
he has a practice of keeping his car doors locked and lowering the windows just
enough to where he can transfer papers through the crack. R. 61-4 at 16 (Malone
Dep. 53). Before he could do even that, Malone complains that Officer Foggey tried
to open the back passenger-side door of his car. *Id.* at 17 (Malone Dep. 54). Malone
also objects that after other officers arrived on the scene and he continued to refuse
to get out of the car, Officer Campbell repeatedly "struck" the front passenger-side
window of the car with his "club" (baton). *Id.* at 18 (Malone Dep. 58).

The Court notes at the outset that Officer Foggey denies pulling on the
handle of Malone's car, R. 61-7 at 5, and that Officer Campbell testified he does not
recall whether he struck the car window with his baton, R. 61-8 at 4. Moreover,
because Malone has not filed a Local Rule 56.1(b)(3)(C) statement of additional

facts, these alleged facts are not properly before the Court. Nevertheless, the Court will assume Malone's version of the facts is true, and will even give credit to Malone's statements to the Court at previous status hearings that Officer Campbell's repeated striking of the car window was at the urging of the other officers in an attempt to force Malone out of the car. But even taking these supposed facts into consideration, they do not give rise to a constitutional claim. Malone admits that he was not injured and no damage was done to his car. R. 61-4 at 15, 19 (Malone Dep. 48, 62). As the Seventh Circuit has said, "the law doesn't concern itself with trifles." *Brandt v. Bd. of Educ. of City of Chi.*, 480 F.3d 460, 465 (7th Cir. 2007). Moreover, while nominal damages are available under § 1983, "such an award presupposes a violation of sufficient gravity to merit a judgment, even if significant damages cannot be proved; and this is not such a case." *Id.* (citations omitted).

Neither Officer Foggey's alleged attempt to open the back door of Malone's car nor Officer Campbell's striking on the car window with his baton rises to the constitutional level of excessive force in violation of the Fourth Amendment. *See Graham*, 490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.") (internal quotation marks and citation omitted). Nor do the officers' actions give rise to potential liability for violation of Malone's Fourteenth Amendment due process rights. *See Tun v. Whitticker*, 398 F.3d 899, 902-03 (7th Cir. 2005) (substantive due process "involves the exercise of governmental power without reasonable

justification" and is "most often described as an abuse of government power which 'shocks the conscience'"). In short, the police officers may have "acted badly, even tortiously, but—and this is the essential point—[the Court cannot] say that their actions rise to the level of a constitutional violation." *Id.*

Turning to whether the officers acted unreasonably in ordering Malone out of the car, the Supreme Court has held that "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Mimms,* 434 U.S. at 111 n.6; *see id.* at 110 ("We think it too plain for argument that the State's proffered justification—the safety of the officer—is both legitimate and weighty. 'Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties.'") (quoting *Terry*, 392 U.S. at 23)). Malone appears to contend that it was unreasonable for the officers to make him get out of the car because he tried to explain to them why he did not have a driver's license and offered other identification in its place. While the Court recognizes that Malone believes he posed no threat to the police officers, what Malone fails to recognize is that the police officers have no way of knowing that for certain. The police officers had the right to demand Malone produce a driver's license. *See United States v. Jackson*, 377 F.3d 715, 717 (7th Cir. 2004). When Malone could not produce a driver's license, the officers were reasonable in asking him to step out of the car, and when Malone refused to do so, it was not unreasonable for the police officers to be concerned that

Malone might pose a threat to their safety. *See Thompson v. Village of Monee*, 110 F. Supp. 3d 826, 837-39 (N.D. Ill. 2015) (police officer reasonably suspected potential danger from plaintiff's failure to obey police orders and interference with officer's execution of his duties by leaving scene during police questioning); *see also Mimms,* 434 U.S. at 110 (citing to study which found that "approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile"). The inconvenience and minimal intrusion into Malone's personal liberty caused by the police officers' order to step out of the car simply "cannot prevail when balanced against legitimate concerns for the officers' safety." *Id.* at 111. In any event, whether the police officers reasonably could have believed that Malone posed a danger to them may be "an interesting question" but "'[i]t is hard to see why that matters, given the probable cause for'" stopping Malone's car. *United States v. Rankins*, 2014 WL 1924017, at *5 (N.D. Ill. May 14, 2014) (quoting *Jackson*, 377 F.3d at 716).

### 3.  Malone's Arrest

Immediately upon exiting the car, Malone was handcuffed, read his *Miranda* rights, and placed in the back of Officer Foggey's police car. Malone alleges this was an unreasonable seizure in violation of the Fourth Amendment, citing to Officer Foggey's deposition testimony in which he "admitted" that Malone was never under arrest. *See* R. 61-7 at 8 (Foggey Dep. 7).

In *United States v. Garcia*, 376 F.3d 648 (7th Cir. 2004), the police officer "who stopped [the defendant's] car testified that he did not plan to arrest the driver unless he was unable to provide positive identification, and that even while in

13

handcuffs [the defendant] was 'detained' rather than 'under arrest.'" *Id.* at 651. Nevertheless, the Seventh Circuit held that "[i]t does not matter what [the police officer] was thinking or planning." *Id.* Moreover, the court held, although the stopping officer "evidently used the word 'arrest' to mean what the Supreme Court calls a 'full custodial arrest'—a trip to the stationhouse for booking and incarceration," and "use[d] the word 'detention' to mean what the Supreme Court calls an arrest," the Fourth Amendment reasonableness standard "depends on facts, not labels," which means that, "[p]olice officers' diction does not affect the constitutional inquiry." *Id.; see also Jackson,* 377 F.3d at 717 ("Sapetti told him— even while slapping on the handcuffs—that he was not 'under arrest' but was just being 'detained' while more identity checking occurred. The officer's language does not change the facts, however: there was probable cause to believe that Jackson had committed a crime, and he was (reasonably) taken into custody."); *Rankins,* 2014 WL 1924017, at *5 (finding that defendant was under arrest when he was handcuffed and patted down, notwithstanding "the agents' assurances to him that he was not").

"'A seizure rises to the level of an arrest when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *Rankins,* 2014 WL 1924017, at *5 (quoting *Abbott v. Sangamon Cnty., Ill.,* 705 F.3d 706, 719 (7th Cir. 2013) (internal quotation marks and citation omitted)). "Although placing an individual in handcuffs does not invariably signal that he is under

arrest, [t]here can be little doubt that a suspect placed in handcuffs is not free to leave and, for all practical purposes, is in police custody." *Monroe v. Davis*, 712 F.3d 1106, 1115 (7th Cir. 2013) (internal quotation marks and citations omitted). Malone was subjected to a Fourth Amendment "seizure" regardless of whether he was formally "under arrest" or simply in "police custody."

But being subjected to an arrest or detention does not offend the Constitution so long as there was probable cause. *See Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) ("[p]robable cause to arrest is an absolute defense to any claim under Section 1983"). "This is so even where the defendant officers allegedly acted upon a malicious motive." *Id.* Probable cause exists "if, at the time of the arrest, the 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). The Court has already found (and Malone concedes) that the police officers had probable cause to believe Malone was violating the law, namely, driving without two functioning headlights. This means the police officers had probable cause to arrest him. But Malone argues it was not reasonable for the officers to arrest him, even though he was driving without two functioning headlights. The reasonableness question, however, has been decided by the Supreme Court against Malone. Just as a traffic violation is sufficient probable cause to stop a car, so too is it sufficient probable cause to arrest the driver of the

car. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."); *see also Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1115 (7th Cir. 2013) ("Once Officer Snyder had probable cause to conduct the traffic stop of Jones for speeding, he could arrest Jones without violating his Fourth Amendment rights."); *Jackson,* 377 F.3d at 716 (officer had probable cause to arrest defendant where he witnessed defendant changing lanes without signaling).

Malone also cites to Officer Foggey's comments on the ride to the station that "[i]f [Malone] would have just listened to [Officer Foggey], [Malone] would never be going through this." R. 61-4 at 20 (Malone Dep. 68). Officer Foggey's comments do not establish the unreasonableness of the officers' conduct, however. Instead, they simply reflect the indisputable fact that, for traffic stops, "[m]ost drivers are given citations and sent on their way." *Garcia*, 376 F.3d at 650. But Malone was in a position similar to that of the defendant in *Jackson*, 377 F.3d at 717, wherein the Seventh Circuit said: "Once Jackson failed to produce a driver's license, the police could not put him back in the car and watch him motor off. (Jackson was traveling alone; no passenger was available to get behind the wheel.) Moreover, he could have been a fugitive. Such a person might claim, as Jackson did, not to be carrying a driver's license or other document that revealed his identity." *Id.* (citation omitted). Malone contends that he did not have his driver's license in his possession because he had been issued a citation, and that he offered the police officers his court

papers, his state ID, and his registration in place of a driver's license. R. 61-4 at 17 (Malone Dep. 56-57). It is not clear to the Court whether Malone in fact did not have a valid driver's license, or whether he just did not have it in his possession because of a previous citation. The Court presumes the latter was the case because the officers ultimately gave Malone his keys back and let him drive away from the station. It does not matter for purposes of Malone's arrest, however, because the police officers had probable cause to stop and then arrest Malone based on his driving a car with only one functioning headlight.

### 4. Search of Malone's Person

After being handcuffed, Malone was subjected to a search of his person. A warrantless search of the person incident to arrest does not violate the Fourth Amendment. *See Chimel v. California,* 395 U.S. 752, 762-63 (1969) ("When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape."); *United States v. Chadwick,* 433 U.S. 1, 15 (1977) (specific concerns about weapons and loss of evidence are not necessary to justify a warrantless search of an individual and personal property immediately associated with the arrestee's person); *see also Jackson*, 377 F.3d at 716 (the Supreme Court has established a "bright-line rule that police are entitled to search the persons and possessions of everyone arrested on probable cause, with or without any reason to suspect that the person is armed or carrying contraband."). The police officers had probable cause to arrest Malone, he was handcuffed and placed in the

back of Officer Foggey's police car, and the search of his person incident to this arrest did not violate the Fourth Amendment.[4]

### 5.    Search and Seizure of Malone's Car

Finally, the Court addresses Malone's complaints about the arresting officers' search and seizure of his car. The police officers' decision to drive Malone's car to the police station is distinct from their decision to search the car. *See United States v. Duguay*, 93 F.3d 346, 351 (7th Cir. 1996). Therefore, the Fourth Amendment analysis should proceed separately.

### (i)    Seizure of Malone's Car

Malone first complains that his car was driven by Officer Campbell to the police station without his consent. Officer Campbell followed standard CPD policies when he drove Malone's car to the station. According to CPD's written policy relating to Vehicle Towing and Relocation Operations, an arrestee's vehicle must be towed "if it cannot be legally, securely, and continuously parked at the scene of the arrest." CPD General Order G07-03, Vehicle Towing and Relocation Operations, Section IV, G, 1.[5] Instead of towing, however, the vehicle can be "driven to the detention facility by authorized police personnel." *Id.*; *see also id.,* Section IV, A, 4

---

[4] Although the extent of the search of Malone's person appears to have been no greater than a pat-down, R. 61-4 at 20 (Malone Dep. 67), Malone was stopped on probable cause and therefore could have been searched fully. *See Childs*, 277 F.3d at 952 ("a person stopped on probable cause may be searched fully, while a person stopped on reasonable suspicion may be patted down but not searched").

[5] The Court can take judicial notice of CPD policies, which are available at http://directives.chicagopolice.org/lt2015/data/a7a57bf0-12cf02e7-7b112-cf05-8178a2 9c2a3f9355.html. *See Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 931 n.2 (S.D. Ill. 2006).

("A member of a two-person unit may drive the vehicle to the district of assignment, district of arrest, or other police facility, as appropriate."). CPD policies also specifically state that "[a] Department member may operate the vehicle to be towed without the owner's consent when a situation dictates its relocation." *Id.*, Section IV, A, 4.

Police are constitutionally permitted to impound a car "if the arrestee is otherwise unable to provide for the speedy and efficient removal of the car from public thoroughfares or parking lots." *Duguay*, 93 F.3d at 353. The "leading case," *id*. at 352, is *South Dakota v. Opperman*, 428 U.S. 364 (1976), which holds that impoundments by the police are justified if "in furtherance of 'public safety' or 'community caretaking functions,' such as removing 'disabled or damaged vehicles,' and 'automobiles which violate parking ordinances, and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic.'" *Duguay*, 93 F.3d at 352 (quoting *Opperman*, 428 U.S. at 368–69); *see People v. Walker,* 592 N.E.2d 1, 4 (Ill. App. 1992) ("Police have authority to seize and remove from the roadway vehicles impeding traffic and threatening public safety."). If the officers, pursuant to their caretaking function, could have had the car towed, then they also should be able to have an officer drive the car to the police station in place of towing, so long as the decision to have an officer drive the car is based on the police caretaking function and is "completely unrelated to an ongoing criminal investigation." *Duguay,* 93 F.3d at 352 (citing *Opperman*, 428 U.S. at 370, n.5).

To ensure that police custody over or impoundment of a car[6] satisfies the reasonableness standard of the Fourth Amendment, the Supreme Court has emphasized the need for "standardized criteria" or "established routine." *Florida v. Well,* 495 U.S. 1, 3 (1990); *see Colorado v. Bertine,* 479 U.S. 367, 375 (1987) ("Nothing in *Opperman* . . . prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity."); *compare Duguay*, 93 F.3d at 352 (impoundment unconstitutional where unreasonable in light of circumstances including lack of any standardized police procedure), *with United States v. Cartwright*, 630 F.3d 610, 614-15 (7th Cir. 2010) (impoundment upheld where reasonable in the circumstances, including "comprehensive towing and impoundment policy"). CPD General Order G07-03 contains standardized criteria governing when an arrestee's car must be towed for impoundment versus when it may be driven by an officer to the police station. Thus, the discretion afforded the police officers in this case "was exercised in light of standardized criteria, related to the feasibility and appropriateness of" driving the car to the station rather than

_____

[6] The term impoundment typically is used in the sense of obtaining and retaining custody over a car for a more extended period of time than occurred here. But broadly speaking, impoundment means to take legal custody over something. *See United States v. Louisiana*, 446 U.S. 253, 264 (1980) ("The word 'impound,' in its application to funds, means to take or retain in 'the custody of the law.'" (quoting Black's Law Dictionary 681 (5th ed. 1979)). Therefore, Officer Campbell's taking of physical custody over Malone's car to drive it to the station can be viewed as a form of, albeit short-lived, impoundment. *See Tillison v. Gregoire*, 424 F.3d 1093, 1096, n.2 (9th Cir. 2005) ("'Impound' means to take and hold a vehicle in legal custody."); *Schwasta v. United States*, 392 A.2d 1071, 1075-76 (D.C. App. 1978) (referring to police custody over motorcycle driven by officer to police station at arrestee's request as an impoundment).

having it towed, and Malone can make "no showing that the police impounded his car "in order to investigate suspected criminal activity." *Bertine*, 479 U.S. at 376. In light of the totality of the circumstances, including a standard police procedure that authorized the police to take custody of the car, Officer Campbell's driving of Malone's car to the police station did not violate the Fourth Amendment's proscription of unreasonable seizures. *See, e.g., United States v. Clinton,* 591 F.3d 968, 972 (7th Cir. 2010) (officers' towing of car lawful, because they followed a standard police procedure after arrest leaving no one to drive the car); *Brown v. Romeoville*, 2010 WL 431474, at *6 (N.D. Ill. Feb. 1, 2010) (impoundment of vehicle pursuant to standardized police procedures was not an unreasonable seizure), *aff'd on other grounds,* 407 F. App'x 56 (7th Cir. 2011).

### (ii)    Search of Malone's Car

While the officers' decision to assume custody over Malone's car was reasonable in the circumstances, the search of Malone's car must be analyzed separately. As an initial matter, Defendants argue that summary judgment in their favor is appropriate on this issue because Malone does not specifically identify which of the police officers who were present at the scene of the arrest conducted the search of the car. As Defendants correctly note, "individual liability under § 1983 requires personal involvement in the alleged constitutional deprivation." *Minix v. Canarecci*, 597 F.3d 824, 833-34 (7th Cir. 2010) (internal quotation marks and citation omitted). Officer Foggey conceded during his deposition that the car was searched but did not say by whom. R. 61-7 at 12. Officer Campbell was never

asked about the search at his deposition. Nevertheless, based on Malone's deposition testimony the Court can say that Officer Foggey did not participate in the search of the car:

> Q. Okay. Once you got out of the car, what happened?
>
> A. Officer Foggey handcuffed me and arrested me and put me in his vehicle.
>
> Q. Okay. So the person that you identify as Officer Foggey was the one who handcuffed you?
>
> A. Yes.
>
> Q. Okay. And then he put you in –
>
> A. Back of his SUV.
>
> Q. All right. And do you recall what Officer Campbell or any of the other police officers that responded were doing as you were being handcuffed?
>
> A. They were searching my car on the inside. I can't say if they popped the trunk. I didn't see that. I just seen them opening up my car, going through the glove compartment box.

R. 61-4 at 20 (Malone Dep. 66). As Malone testified, at the time of the search Officer Foggey was busy handcuffing Malone and putting him in the patrol car. Therefore, Officer Foggey is entitled to summary judgment on Malone's illegal search claim because he was not personally involved in the search. *Minix*, 597 F.3d at 833-34.

While ruling out Officer Foggey as the person who conducted the search is fairly easy on the current record, Officer Campbell's role (or lack thereof) in the search is not as clear. Nevertheless, there has been no showing that identification of the responsible officers is impossible, and, in fact, Malone attempted to secure that information by asking Defendants to identify the other officers who were at the scene. The Court instructed Malone to ask that question of Officers Foggey and

Campbell at their depositions, rather than serve Defendants with interrogatory requests, but those officers testified they could not remember the names of the other officers. Malone's inability to obtain the identity of the other officers through his own discovery efforts is one of the bases for his previous motion to re-open discovery, which the Court denied without prejudice, as well as the motion for attorney representation, which Malone recently filed but the Court has not yet ruled upon. R. 78. Knowing prior to the officer depositions that Malone was seeking this information, Defendants could have voluntarily provided it to him. Nevertheless, the Court need not delay final resolution of this matter by reopening discovery and/or granting Malone's motion for attorney representation. Instead, the Court will draw all reasonable inferences from the record in favor of Malone by concluding that Malone has identified Officer Campbell as the police officer who conducted the search of his vehicle. Specifically, the Court infers from Malone's use of the pronoun "they" in response to the question at his deposition asking what "Officer Campbell *or* any of the other police officers" were doing, that Malone intended to include Officer Campbell among the police officers who were searching his car. If Officer Campbell did not participate in the search, then he should have submitted an affidavit saying so. The lack of clarification from Officer Campbell on that issue means that Defendants have not met their burden on summary judgment of establishing the right to judgment in favor of Officer Campbell on the basis of Malone's failure to identify the officers personally responsible for the search.

Turning to the next issue, Defendants' argue that the search of Malone's car was reasonable under the Fourth Amendment because it was conducted to ensure the safety of Officer Campbell while driving Malone's car to the police station. R. 58 at 11-12. In support of their argument, Defendants rely on *Arizona v. Gant*, 556 U.S. 332 (2009). In *Gant,* the Supreme Court adopted a two-part rule under which a warrantless search of the passenger interior of an automobile may be conducted incident to arrest. Such a search is reasonable, according to the Supreme Court, in two circumstances: (1) when the arrestee "is unsecured and within reaching distance of the passenger compartment *at the time of the search*," or (2) "when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Id.* at 343 (emphasis added) (internal quotation marks and citation omitted). At the time of the search, Malone was outside the car being handcuffed and placed in the police vehicle by Officer Foggey. The search therefore cannot be justified under the first part of the *Gant* rule. *See Santiago v. Ronan*, 2012 WL 2872116, at *3 (N.D. Ill. July 12, 2012) (search incident to arrest justification not available where plaintiff "was secure in a squad car when the vehicle was searched"). Further, Malone was arrested for driving with a broken headlight and without a driver's license. A reasonable officer would not search the vehicle looking for evidence of these traffic offenses. Therefore, the search cannot be justified under the second part of the *Gant* rule either. *Id.* (where plaintiff was arrested for offenses of littering and driving without a license, warrantless search of car not justified by belief that evidence of those offenses might be found in car).

There is a third possible exception to the warrant requirement for automobiles, however, which Defendants have not argued in their summary judgment brief. "Searches conducted by the police prior to towing a car are lawful if conducted pursuant to standard police procedures aimed at protecting the owner's property—and protecting the police from the owner's charging them with having stolen, lost, or damaged his property." *United States v. Cherry*, 436 F.3d 769, 772 (7th Cir. 2006) (internal quotation marks and citations omitted). The exception is known as the inventory search rule, and the Supreme Court has long held that such searches "may be 'reasonable' under the Fourth Amendment even though . . . not conducted pursuant to a warrant based upon probable cause." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987).

The Court already has found that Officer Campbell's assumption of custody over the car was based on his community care-taking function and therefore lawful. But there is no evidence in the record that Officer Campbell conducted an inventory search "in order to protect [Malone's] property" or "to guard the police from claims of lost or missing items allegedly removed from the vehicle at the time of seizure." *United States v. McClellan*, 165 F.3d 535, 544 (7th Cir. 1999). If there was such evidence, the search would be similar to the one upheld in *Schwasta*, 392 A.2d at 1072, where the police officer drove the arrestee's motorcycle to the police station and searched an unlocked saddlebag on the back of the motorcycle because the arrestee had told the officer there were valuable items in the saddlebag. Nevertheless, in *Bertine*, the Supreme Court noted that inventory procedures are

performed not only "to protect an owner's property while it is in the custody of the police[ ] [and] to insure against claims of lost, stolen, or vandalized property," but *also* "to guard the police from danger." 479 U.S. at 372; *see also Woos v. Sheahan*, 57 F. App'x 694, 696 (7th Cir. 2002) (police are allowed to conduct an inventory search "to guard against danger"). The Court has not been able to find any written CPD policy or procedure that specifically authorizes a protective search of the inside compartment before a police officer drives an arrestee's vehicle to the police station. Nevertheless, a search can still be reasonable in the circumstances of a specific case, and therefore comply with the Fourth Amendment, even in the absence of an express policy. *See Cherry,* 436 F.3d at 776 (Posner J., dissenting). A reasonable officer in the position of Officer Campbell would conduct a protective search of the interior of an arrestee's car before driving that car to the police station. There is no basis in the record for concluding that the search conducted by Officer Campbell was anything other than that, and, in particular, no evidence in the record that the search was "a ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. at 4. Accordingly, the Court concludes that the search was reasonable under the inventory search exception as a protective measure incident to Officer Campbell performing his police care-taking function of driving the car to the police station.

In the alternative, the Court concludes that, even if there was a constitutional violation, it was not clearly established at the time of the search. That is, there is no clearly established law holding that a warrantless search of the

interior compartment of an arrestee's vehicle conducted by a police officer, who is about to drive the vehicle to the police station pursuant to written police policies, is unreasonable under the Fourth Amendment. Therefore, a reasonable police officer in Officer Campbell's position would not have known that the search of Malone's car violated Malone's Fourth Amendment rights. Accordingly, Officer Campbell is entitled to summary judgment on Malone's unlawful search claim based on the doctrine of qualified immunity. *See Fleming v. Livingston Cnty., Ill.*, 674 F.3d 874, 879 (7th Cir. 2012) ("Qualified immunity protects public officials from liability for damages if their actions did not violate clearly established rights of which a reasonable person would have known.").[7]

## III. FURTHER DISCOVERY

Malone has argued that he needs further discovery due to the fact that Defendants were unable to produce any in-car video recording of the incident in question. Malone has not provided any basis for the Court to question Defendants' good faith in their previous response to his discovery request that no video recording could be found. While the Court recognizes Malone's frustration with

---

[7] The Court notes that Malone has not suffered any actual damages from the search of his car, even if the search was unlawful. Malone asserts that he suffers severe emotional distress, but Defendants are entitled to summary judgment on that compensatory damages claim because there is no evidence in the record to support a finding that the officers' search of Malone's car was the proximate cause of his emotional distress. *See Clayton-El v. Fisher*, 96 F.3d 236, 243 (7th Cir. 1996) (plaintiff can collect compensatory damages only if he can prove that the constitutional violation "caused him to suffer emotional and mental pain and suffering"). Therefore, if the Court were to hold there was a constitutional violation, and if Officer Campbell was not entitled to qualified immunity, Malone would be entitled to at most nominal damages in the amount of $1. *See Carey v. Piphus*, 435 U.S. 247, 266 (1978).

Defendants' discovery response that no video is available for the incident in question, the Court cannot conclude on the record that Defendants' failure to produce a recording connotes wrongdoing on Defendants' part. Nor does the Court see any need for further discovery to look into the issue further. The facts on which Malone's claims are based are largely undisputed. The only possible information a recording might provide that would be helpful to the issues raised in Defendants' summary judgment motion is the identity of the other officers who may have participated in the search of Malone's car. But the Court has held that the search in any event was not unreasonable, and, if it was, the officers who participated in it would be entitled to qualified immunity. Therefore, even with the video recording, Defendants would be entitled to summary judgment on Malone's Fourth Amendment claims based on the warrantless search of his car. Accordingly, the Court declines to order further discovery regarding the missing in-car video recording.

## IV. OTHER ISSUES

In keeping with the principle that the pleadings of a *pro se* plaintiff are to be construed in the most liberal light possible, Defendants have made a good faith effort to address every legal issue that possibly could be said to arise out of the allegations in both the original *pro se* complaint and the amended *pro se* complaint. The Court carefully considered all arguments presented by the parties and all issues raised by the facts in the record. The Court finds that any additional issues not addressed in this opinion were either not raised by the complaint or else

constitute alternative arguments that need not be resolved given the decision of the Court.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment, R. 57, is granted.

ENTERED:

_____
Thomas M. Durkin
United States District Judge

Dated: March 25, 2016